UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMONE WILSON,

        Petitioner,

                                       CASE NO. 2:11-CV-14675

    v.                                  JUDGE GEORGE CARAM STEEH
                                        MAGISTRATE JUDGE PAUL J. KOMIVES

WILLIE SMITH,

        Respondent.[1]

_____/

## **REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    E.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    F.    *Choice of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    G.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            a.  Failure to Challenge Identification . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
            b.  Failure to Object to Prosecutor's Rebuttal . . . . . . . . . . . . . . . . . . . . . 24
        3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    H.    *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        1.    *State Court's Failure to Grant Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . 27
        2.    *Evidentiary Hearing in This Court* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    I.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 30
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    J.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

---

    [1]By Order entered this date, Willie Smith has been substituted in place of Mitch Perry as the proper respondent in this action.

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.   REPORT:

A.    *Procedural History*

1.    Petitioner Ramone Wilson is a state prisoner, currently confined at the Carson City Correctional Facility in Carson City, Michigan.

2.    On October 17, 2003, petitioner was convicted of carjacking, MICH. COMP. LAWS § 750.529a; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Oakland County Circuit Court.  On January 5, 2006, he was sentenced to a term of 15-60 years' imprisonment on the carjacking conviction, consecutive to a mandatory term of two years' imprisonment on the felony-firearm conviction.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.    DEFENDANT'S CONVICTION FOR FELONY FIREARM SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN DENYING THE MOTION FOR DIRECTED VERDICT AS TO THIS CHARGE.

II.   DEFENDANT'S CONSTITUTIONAL RIGHT TO BE REPRESENTED BY AN ATTORNEY OF HIS CHOICE WAS VIOLATED WHERE THE TRIAL COURT DENIED COUNSEL'S APPEARANCE AND ABUSED ITS DISCRETION IN FAILING TO ADJOURN HIS SENTENCE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Wilson*, No. 268417, 2007 WL 914622 (Mich. Ct. App. Mar. 27, 2007) (per curiam).

4.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court rejected petitioner's application for leave to appeal as untimely.

5.    Petitioner filed an application for the writ of habeas corpus in this Court on November

2

1, 2007, raising the two claims that he raised on direct appeal, as well as three additional claims. The Court dismissed the petition without prejudice based on petitioner's failure to exhaust his claims.

6.     Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising claims that counsel was ineffective for failing to suppress an identification, object to the prosecutor's closing argument, and object at sentencing, as well as the two claims raised on direct appeal. On April 30, 2010, the trial court denied petitioner's motion, concluding that the new claims were barred by petitioner's failure to raise them on direct appeal pursuant to MICH. CT. R. 6.508(D)(3). *See People v. Wilson*, No. 03-190315-FC (Oakland County, Mich., Cir. Ct. Apr. 30, 2010) [hereinafter "Trial Ct. op."]. Petitioner subsequently filed an application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

I.     TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO CHALLENGE A PHOTO LINE-UP AND IN COURT IDENTIFICATION.

II.    TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO IMPROPER PROSECUTOR REBUTTAL ARGUMENT.

III.   DEFENDANT CAN SHOW "CAUSE" UNDER MCR 6.500 FOR FAILING TO RAISE THESE ISSUES ON DIRECT APPEAL, I.E. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

IV.    THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ORDER AN EVIDENTIARY (GINTHER) HEARING.

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders. *See People v. Wilson*, 490 Mich. 858, 801 N.W.2d 880 (2011); *People v. Wilson*, No. 301350 (Mich. Ct. App. Jan. 21, 2011).

7.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on October 25, 2011. As grounds for the writ of habeas corpus, he appears to raise only the four claims that he raised in connection with his motion for relief from judgment. However, respondent

interprets the petition to also include the claims raised on direct appeal and in petitioner's prior habeas application, and I therefore consider all of the claims, referring to petitioner's prior application for his arguments concerning the first two claims.

8.    Respondent filed his answer on April 30, 2012.   He contends that petitioner's ineffective assistance of counsel claims are procedurally defaulted, and that all of petitioner's claims are without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the July 29, 1999, carjacking of Kimberly Davis (then Kimberly English) in a parking lot of a Target store in Farmington Hills.   The evidence mainly consisted of the testimony of Davis.   She testified that on the day in question, she was driving her month-old Lexus GS 300, which she had washed earlier that day.   She parked at the far end of the lot, because she did not want anyone to scratch the car.   She exited the Target store with three bags, and unlocked the doors to her car remotely.   As she placed the bags inside her car, she heard someone run up behind her, and she turned around to find two African American males "at her face."   The men started pushing her into the car, but she fought back and screamed for help.   One of the men (whom she later identified as petitioner) said to the other, "man, show her the gun."   The other man then pulled out a gun and pointed it at her head.   Davis stopped resisting at this point.   Petitioner's accomplice pushed her into the backseat, while petitioner took her keys , got into the driver's seat, turned on the car, and slowly drove out of the parking lot.   As petitioner drove, Davis through the parking lot, she opened the door and slid out of the moving car, "helped" out by petitioner's accomplice pushing her.   A bystander helped her to a Kohl's store, where store employees phoned the police. When the police arrived she was hysterical, but was eventually able to tell the police what had happened.   The police took her to view some possible suspects, but she did not identify anyone.   Her

car was eventually found not far from where it was taken.  *See* Trial Tr., dated 10/14/03, at 75-89.

Over three years later, on August 15, 2002, Detective John Haupt called her to look at a photographic line-up.  According to Davis, the only instruction Haupt gave her was to "just look at the line up and see if any of these look like the suspect."  *Id.* at 95-96.  After testifying about his initial investigation, *see id.* at 166-75, Haupt testified that in August 2002 he was informed that fingerprints that had been taken from the victim's car and entered into the Automated Fingerprint Information System (AFIS) had been matched to petitioner's prints.  He arranged a photographic lineup with petitioner's picture and the pictures of five other males who were similar in age, build and skin color to petitioner.  Petitioner's picture was number 4 in the line-up.  He contacted Davis, and she came to view the line-up.  Davis identified petitioner's picture, indicating that she was certain of her identification because of petitioner's ears.  *See id.* at 176-79.  Haupt and another detective interviewed petitioner, who denied having any knowledge of the carjacking.  However, petitioner had no explanation for how his prints had gotten on Davis's car.  *See id.* at 180-85.  An arrest warrant was obtained, but when police attempted to execute it the following day, petitioner could not be located.  It took six months for police to find and arrest petitioner.  Upon his arrest, Haupt again questioned petitioner.  Petitioner again could not explain how his prints had gotten on the victim's car.  *See id.* at 185-87.

Officer Richard Wehby, who responded to the call placed from the Kohl's store, testified regarding his interview of the victim and her descriptions of the crime and the perpetrators.  *See* Trial Tr., dated 10/16/03, at 29-60.  Detective Patterson testified to the interview he and Haupt conducted of petitioner at his home.  *See id.* at 60-72.  Officer John Chump, an evidence technician, testified concerning the collection and processing of the fingerprints found on the victim's car.  *See id.* at 72-127.  Michigan State Police Detective Sergeant Mary Knox likewise testified concerning the

fingerprint evidence. *See id.* at 128-51. Petitioner waived his right to testify on the record, *see id.* at 155, and petitioner presented no evidence in his defense.

C.    *Procedural Default*

Respondent contends that petitioner's ineffective assistance of trial counsel claims are barred by petitioner's procedural default in the state courts because he failed to raise these claims on direct appeal, and they were barred by the trial court on collateral review on this basis pursuant to MICH. CT. R. 6.508(D)(3). Even if the claims are defaulted, however, it is necessary to consider the merits of petitioner's claims. Petitioner asserts that appellate counsel rendered ineffective assistance in failing to raise these claims. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Consideration of counsel's effectiveness, however, depends in part on consideration of petitioner's underlying claims. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects

the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

8

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Sufficiency of the Evidence*

Petitioner first contends that the prosecution presented insufficient evidence to prove his guilt beyond a reasonable doubt on the felony-firearm charge.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial."  *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the

9

evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16). Under Michigan law, "'[t]he elements of felony-firearm are that the defendant [1]

10

2:11-cv-14675-GCS-PJK   Doc # 11   Filed 12/21/12   Pg 11 of 32   Pg ID 774

possessed a firearm [2] during the commission of, or the attempt to commit, a felony.'" *People v. Johnson*, 293 Mich. App. 79, 82-83, 808 N.W.2d 815, 818 (2011) (quoting *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864, 869 (1999)); *see also*, *Parker v. Renico*, 450 F. Supp. 2d 727, 733 (E.D. Mich. 2006) (Cohn, J.) (elements of felony firearm and felon in possession include possessing the weapon). "Possession of a firearm under Michigan law can be actual or constructive and can be proven by circumstantial evidence." *Parker*, 450 F. Supp. 2d at 733 (citing *People v. Hill*, 433 Mich. 464, 469, 446 N.W.2d 140, 143 (1989)).

      2.    *Analysis*

      Petitioner contends that the prosecution presented insufficient evidence to establish that he possessed a firearm during the commission of the carjacking. It was undisputed that the only gun identified by the victim was in the physical possession of petitioner's accomplice. Nonetheless, the Michigan Court of Appeals concluded that the evidence was sufficient to prove that petitioner constructively possessed the gun:

> Where an accomplice simply displays a weapon while the defendant commits an offense, the defendant does not have constructive possession over the weapon because he does not control the weapon in the accomplice's hands. In this case, however, the evidence showed when the victim did not willingly submit, defendant directed his accomplice to "show her the gun." The accomplice obeyed, pulling out a weapon and pointing it at the victim. This evidence was sufficient to show that defendant had the right to control the use of the weapon held by his accomplice.

*Wilson*, 2007 WL 914622, at *1. The Court should conclude that this determination was reasonable.

      As explained above, the Michigan Supreme Court has held that constructive possession is sufficient to establish possession under § 750.227b, and the court of appeals in petitioner's case held that a defendant's ability to control the use of a weapon held by an accomplice is sufficient to establish constructive possession. These determinations represent interpretations of state law that are not subject to challenge in assessing petitioner's sufficiency of the evidence claim. As noted above,

11

"[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson*, 432 U.S. at 211 n.12; *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[w]hich acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *Mullaney*, 421 U.S. at 691 ("This Court ... repeatedly has held that state courts are the ultimate expositors of state law . . . .")). "'What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.'" *Sanford v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991). As the Second Circuit explained, "*Winship* does not invite federal habeas courts to engage in a substantive analysis of state statutory terms. Our federal constitution does not dictate to the state courts precisely how to interpret their own criminal statutes." *Id.* In *Sanford* the Sixth Circuit explained, in language worthy of complete quotation here:

"*Jackson* establishes that states must act on the basis of sufficient evidence. The principle seems unproblematic: it is barbaric to imprison persons who no reasonable juror could think had committed a crime. Implementing *Jackson* is not so easy as stating its principle, however. Judgments represent the application of law to fact. Evidence can be "insufficient" only in relation to a rule of law requiring more or different evidence. When a state court enters or affirms a conviction, it is saying that the evidence satisfies the legal norms. These norms are for the state to select. State law means what state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254. "A federal court may not issue the writ on the basis of a perceived error of state law." The difference between unreviewable legal interpretations and factual claims open under *Jackson* establishes a formidable problem of implementation.

Consider four situations in which a defendant might say that the evidence is insufficient:

(1) State law defines the combination of elements X, Y, and Z as criminal. (Perhaps X is killing, Y is intent to kill, and Z is lack of justification.) The prosecutor and the state courts concede that X, Y, and Z are elements of the crime and agree with the defendant on their meaning. Defendant contends that there is no basis on which the trier of fact could find Z. The state court disagrees and convicts.

(2) Defendant believes that the combination of elements X, Y, and Z is an offense. The court disagrees, holding that the state need prove only X and Y. After a

> trial at which the prosecution introduces no evidence of Z, the court convicts the defendant.
>
> (3) State law defines the combination of elements X, Y, and Z as criminal. Defendant believes that element Z can be satisfied only if the state establishes fact Z', but the state court disagrees. After a trial at which the prosecution introduces some evidence of Z but does not establish Z', the court convicts the defendant.
>
> (4) State case law defines the combination of elements X, Y, and Z as criminal. The supreme court of the state concludes that this is an incorrect interpretation of the statute and that the prosecution need establish only X and Y. Circumstance Z, the court concludes, is an affirmative defense. After a trial at which the prosecution establishes only X and Y, the court convicts the defendant."

*Sanford*, 288 F.3d at 860-61 (quoting *Bates*, 934 F.2d at 102 (internal citations omitted)). Case (1) represents the typical *Jackson* claim, which is cognizable on habeas review. Case (2), however, presents a pure question of state law that is beyond the reach of a federal habeas court, while Case (3) likewise is merely a variant of Case (2). *See id.* at 861 (citing *Bates*, 934 F.2d at 102).

Here, the court of appeals's determination that constructive possession could be established by showing petitioner's ability to control his accomplice's use of the weapon falls squarely within Case (3), and thus represents a determination of law not subject to challenge on habeas review. Thus, the only question is whether the prosecution presented sufficient evidence to show that petitioner exercised control over the weapon. The Court should conclude that the prosecution did so. As testified to by the victim, neither petitioner nor his accomplice brandished a gun at the start of the encounter. The gun was not brandished by petitioner's accomplice until immediately after petitioner instructed the accomplice to "show her the gun." In light of the court of appeals's interpretation of the elements, the victim's testimony that petitioner directed his accomplice's use of the gun provided sufficient evidence for the jury's verdict to rise above "the threshold of bare rationality." *Coleman*, 132 S. Ct.. at 2065. It follows that the Michigan Court of Appeals's rejection of this claim was a reasonable application of *Jackson*. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Choice of Counsel*

Petitioner next contends that he was denied his right to counsel of his choice by the trial court's denial of his request to adjourn sentencing to accommodate his newly retained counsel.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. amend. VI.  This right contemplates a corollary right to the counsel of one's choice.  As the Supreme Court has explained, "'the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.'"  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)).  Thus a criminal defendant who has the desire and the financial means to retain his own counsel generally "'should be afforded a fair opportunity to secure counsel of his choice.'"  *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  This right, however, is not absolute, and "is circumscribed in several important respects."  *Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also*, *Gonzalez-Lopez*, 548 U.S. at 144.

For example, "[t]he Sixth Amendment requires only that the defendant be given a fair or reasonable opportunity to obtain particular counsel; it does not guarantee an absolute right to the counsel of one's choice."  *United States v. Paternostro*, 966 F.2d 907, 912 (5th Cir. 1992); *see also*, *Gonzalez-Lopez*, 548 U.S. at 144; *United States v. Baker*, 432 F.3d 1189, 1248 (11th Cir. 2005).  Further, and importantly, the right to counsel of one's choice "must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized

14

as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988); *see also*, *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984) ("Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of that right must be balanced against the court's authority to control its docket."). Further, trial courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citations omitted) (citing *Wheat*, 486 U.S. at 160; *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)).

Where a trial court denies a continuance for a defendant's choice of counsel to be retained or appear at trial, the trial court's decision is deferentially reviewed. "The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). At the same time, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Id.* In short, "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel." *Morris*, 461 U.S. at 11-12 (quoting *Ungar*, 376 U.S. at 589).

2. *Analysis*

At trial, petitioner was represented by Jerome Sabbota. Although petitioner was convicted in October 2003, he fled the state, and was not recaptured until several years later. Sentencing was originally scheduled for December 9, 2005, but was reset for January 5, 2006. At sentence, Mr. Sabbota appeared, as did Kathy Henry, who indicated that she had been retained by petitioner's family to represent petitioner in the sentencing proceedings. Ms. Henry requested an adjournment, but the

15

trial court denied the motion, and Mr. Sabbota continued to represent petitioner at the sentencing. After setting forth the appropriate Sixth Amendment principles, the Michigan Court of Appeals rejected petitioner's claim that the trial court abused its discretion in failing to grant a continuance. The court reasoned:

> The trial court did not abuse its discretion in denying defendant's request to adjourn sentencing to accommodate attorney Henry. The record clearly shows that the court was willing to allow Henry to appear on defendant's behalf as long as she was willing to proceeding with sentencing. The court's decision not to adjourn sentencing was reasonable. Defendant did not offer any reason for discharging attorney Sabbota, who was prepared to go forward with sentencing. Further, defendant waited until the day of sentencing to request substitution of counsel even though he had been advised of the sentencing date a month in advance.

*Wilson*, 2007 WL 914622, at *2.[2] This determination was reasonable.

As noted above, a trial court has broad discretion in dealing with requests to change counsel. The standard set forth by the Supreme Court for assessing a trial court's exercise of its discretion is a broad, general standard, under § 2254(d)(1) the state courts had "'more leeway . . . reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 130 S. Ct. 1855, 1864 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, because the applicable standard "is a general one, . . . the range of reasonable applications is substantial." Here, petitioner cannot

---

[2]The court of appeals also reasoned that petitioner had failed to establish prejudice from the trial court's ruling. This portion of the court of appeals's opinion was arguably contrary to clearly established federal law. In *Gonzalez-Lopez*, the Supreme Court held that a denial of the right to counsel of one's choice does not require a finding of prejudice, and is not subject to harmless error review. *See Gonzalez-Lopez*, 548 U.S. at 146, 150. This alone, however, does not entitle petitioner to habeas relief. The *Gonzalez-Lopez* rule applies only after it is shown that the trial court has "'wrongly' denied defendant's choice of counsel." *United States v. Hickey*, No. CR 97-0218, 2006 WL 1867708, at *14 (N.D. Cal. July 6, 2006); *see also*, *United States v. Zangvill*, 197 Fed. Appx. 888, 891 n.1 (11th Cir. 2006); *United States v. Mikell*, No. 97-CR-81493, 2007 WL 188566, at *4 (E.D. Mich. Jan. 22, 2007) (Cleland, J.). Because, as explained below, the court of appeals reasonably concluded that the trial court did not abuse its discretion in denying newly retained counsel's request for a continuance, petitioner was not "wrongly" denied his right to counsel of his choice, and the *Gonzalez-Lopez* structural error rule does not apply.

16

show that the court of appeals's determination was outside of the substantial range of reasonable applications. The trial court did not prohibit Ms. Henry from representing petitioner at sentencing; rather, the court merely declined to grant a continuance so that Ms. Henry could further prepare. This decision was well within the trial court's discretion. Petitioner had been convicted over three years prior to sentencing, and had chosen to abscond and flee the state. After petitioner had been arrested, he had a substantial amount of time to secure new counsel if he so desired. Indeed, his sentencing was originally scheduled for December 9, 2005, but was not held until January 6, 2006. Thus, at a minimum, petitioner had a month to secure new counsel. Despite this, petitioner waited until the day of sentencing, a date three and a half years after his conviction, to request that newly retained counsel be permitted to represent him. In these circumstances, petitioner cannot show that the trial court abused its discretion in denying a continuance, and thus he cannot show that the denial of the continuance wrongly deprived him of his right to counsel of his choice. *See United States v. Pineda Pineda*, 481 Fed. Appx. 211, 212 (5th Cir. 2012) (per curiam) (no denial of right to counsel of choice by denial of motion for continuance where, *inter alia*, the motion was "not made until the day of the sentencing hearing, the newly retained attorney was not prepared to proceed without a continuance, the case had been going on for 'a very long time' already, [and defendant] presented no basis why his appointed counsel would not be suitable to proceed at the sentencing hearing[.]"); *United States v. Barreras*, ___ Fed. Appx. ___, ___, 2012 WL 3659811, at *2 (2d Cir. Aug. 28, 2012) (district court did not deprive defendant of his right to counsel of his choice by denying motion for substitution where motion was made "on the eve of sentencing," "[s]entencing had already been adjourned twice," and new counsel "informed the District Court that he was not prepared to represent [defendant] at the scheduled sentencing and would require yet another adjournment."). It follows that the Michigan Court of Appeals's rejection of this claim was a reasonable application of clearly established federal

17

law.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Ineffective Assistance of Counsel*

Petitioner also contends that he received ineffective assistance of both trial and appellate counsel.  Specifically, he contend that trial counsel was ineffective for failing to challenge the victim's identification of him both in the photo line-up and in court, and for failing to object to the prosecutor's improper rebuttal argument.  He also contends that appellate counsel was ineffective for failing to raise his trial counsel claims on direct appeal.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id.*  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial

18

strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420.

19

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).[3]

### 2.    Trial Counsel

#### a.  Failure to Challenge Identification

Petitioner first contends that trial counsel was ineffective for failing to challenge the victim's line-up and in-court identifications of him.  Considering the merits in the alternative, the trial court rejected this claim.  The court reasoned that petitioner had failed to "support his conclusion that the photo array was illegally tainted and suggestive," and because "there was no impropriety in the pretrial identification procedure, there was no need for the prosecutor to establish an independent basis for the in-court identification."  Trial Ct. op., at 4.  The court therefore concluded that because there was "no basis for seeking to suppress the identification[,] [t]rial counsel was not ineffective for failing to advocate a meritless position."  *Id*.  This determination was reasonable.

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law."  *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967).  Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial

---

[3]Although the trial court determined that this claims were barred by petitioner's failure to raise them on direct appeal, the AEDPA standard is still applicable.  Notwithstanding the trial court's application of a procedural bar, the trial court also considered the merits of the claims in the alternative. *See* Trial Ct. op., at 4-6.  Where a state court addresses the merits as an alternative ground for decision notwithstanding its application of a procedural bar, the adjudication is considered "on the merits" and is entitled to deference under the AEPA. *See Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008); *see also*, *Rolan v. Coleman*, 680 F.3d 311, 319-20 (3d Cir. 2012) (citing cases).

identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972). A suggestive line-up alone, however, does nor require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Thus, the central question in a case where the pre-trial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114. Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id.* If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).

Here, petitioner has pointed to no impermissibly suggestive pretrial identification procedure that tainted Davis's in-court identification. A line-up is impermissibly suggestive if "the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection."

*Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001).  Thus, a line-up is impermissibly suggestive where it "emphasizes the focus on a single individual thereby increasing the likelihood of misidentification."   *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998) (internal quotation omitted); *see also*, *United States v. Wong*, 40 F.3d 1347, 1359-60 (2d Cir. 1994); *Griffin v. Rose*, 546 F. Supp. 932, 936 (E.D. Tenn. 1981), *aff'd*, 703 F.2d 561 (6th Cir. 1982).  In short, an identification procedure is suggestive only if it "directs undue attention to a particular" person. *State v. Ramires*, 37 P.3d 343, 350 (Wash. Ct. App. 2002).  Thus, a photographic array is impermissibly suggestive if "the picture of the accused, matching descriptions given by the witness, so stands out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit."  *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994) (internal quotation omitted).

Here, Detective Haupt testified that he arranged a photographic lineup with petitioner's picture and the pictures of five other males who were similar in age, build and skin color to petitioner.  He further testified that he informed the victim only that a suspect may or not be in the array, and that she should simply tell him if she recognized anyone.  Petitioner has provided no evidence to dispute Haupt's testimony regarding the composition of the array or to show that his picture stood out from the others included in the array.  Petitioner argues that because the victim was unable to give a detailed description of the perpetrators at the time of the crime, and because she was not 100% certain of her identification at the photo line-up, the array must have been suggestive and tainted her subsequent, certain, identification of petitioner at trial.  While petitioner's claims were a basis to challenge the credibility of the victim's identification testimony at trial, they do not provide a basis for suppression of that testimony.  "Without any evidence of impermissibly suggestive procedures, . . . these claims go to the weight of the identification testimony and not its admissibility.  As various

22

courts have explained, '[g]enerally if identification procedures prior to trial were not unduly suggestive, questions as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility.'" *Williams v. Romanowski*, No. 2:06-CV-12670, 2008 WL 6875005, at *29 (Jan. 29, 2008) (Komives, M.J.) (quoting *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir. 1994); citing *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001)), *magistrate judge's report adopted*, 2009 WL 4947429, at *3 (E.D. Mich. Dec. 14, 2009) (Tarnow, J.). And because petitioner cannot show that the in-court identification was inadmissible by virtue of a suggestive pre-trial identification procedure, any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Object to Prosecutor's Rebuttal

Petitioner also contends that counsel was ineffective for failing to object to the prosecutor's improper rebuttal argument. During closing argument, defense counsel argued that the victim's identification of petitioner was not credible, and that she identified petitioner through a process of elimination because she wanted to "catch the guy." Trial Tr., dated 10/16/03, at 166. In response, the prosecutor argued in rebuttal:

> Don't fall for this spit wad theory of defense, which is, I've got to poke holes in anything I can, so what I'm going to do is say the victim wants to pin it on somebody and the victim was mistaken and the victim gave inconsistent statements. That doesn't poke reasonable doubt.
> Using your common sense, your every day experience, you know that people leave out details. Looking at the time period that this case has spanned, four years total, the recall is amazing. Her testimony is consistent with her testimony under oath previously. It's consistent with her statements to the officer after seeing the picture. And she explained to you upon seeing the picture that she remembered the defendant,

23

wouldn't forget him.
        The defense's argument that she wants to pin it on somebody is totally meritless.

Trial Tr., dated 10/16/03, at 173-74.  Petitioner contends that this comment improperly denigrated counsel and his defense.  The trial court rejected petitioner's claim, concluding that "[t]he prosecutor's rebuttal argument was a permissible response to defense counsel's closing argument." Trial Ct. op., at 5.  This determination was reasonable.

Petitioner cannot show that the prosecutor's comment denied him a fair trial.  First, it was responsive to petitioner's strategy in defending the case, as laid out in counsel's closing statement. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986)(one factor in evaluating claims of prosecutorial misconduct is whether the prosecutor's statements were "invited by or was responsive" to the defense.).  More importantly, the prosecutor's comment preceded and concluded her discussion of why the evidence showed that the victim's identification of petitioner was credible.  The comment did not disparage petitioner or his counsel personally, and was directed solely at whether the jury should accept petitioner's theory of the case.  The comment falls far short of even more egregious comments which have been held not to deprive a defendant of a fair trial.  *See Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"); *See United States v. August*, 984 F.2d 705, 714-15 (6th Cir. 1992) (on direct review of federal conviction, prosecutor's comment that defense counsel was trying to trick the jury did not rise to the level of prosecutorial misconduct, noting that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for truth."); *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments that defense theory was rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician pulls rabbits out of his hats," and

24

that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief); *Irwin v. Singletary*, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995) (habeas relief not warranted based on prosecutor's statement during closing argument that defendant was "grasping at straws"). Because the comment was not improper, petitioner cannot show that counsel performed deficiently by failing to object. And even if he could, because the comment did not deprive petitioner of a fair trial, he cannot show that he was prejudiced by counsel's failure to object. *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial); *Rich v. Curtis*, No. 99-CV-73363, 2000 WL 1772628, at *8 (E.D. Mich. Oct. 24, 2000) (Friedman, J.) (same). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Appellate Counsel*

Petitioner next contends that his appellate counsel was ineffective for failing to raise on direct appeal his ineffective assistance of trial counsel claims. To the extent petitioner raises this claim as an independent ground for relief, rather than simply as a cause to excuse any procedural default, the Court should conclude that petitioner is not entitled to relief on the claim. With respect to appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id*. As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption

25

of effective assistance of counsel [can] be overcome.'" *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See id.* at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). For the reasons explained above, each of petitioner's underlying ineffective assistance of trial counsel claims is without merit, and petitioner therefore cannot show that the issues appellate counsel failed to present on appeal were clearly stronger than those raised on appeal, or that he was prejudiced by counsel's failure to raise them. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Evidentiary Hearing*

        In his final claim, petitioner contends that the trial court abused its discretion in failing to hold an evidentiary hearing on his claims. It is not clear whether petitioner is raising this claim as an independent basis for relief, or is merely seeking an evidentiary hearing in this Court. In either event, the claim is without merit.

        1.      *State Court's Failure to Grant Evidentiary Hearing*

        Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). As the Sixth Circuit has explained:

        [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th

26

Cir.2002). . . . [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id*. at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id*. at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). Thus, the trial court's failure to hold an evidentiary, even if erroneous under state law, does not entitle petitioner to habeas relief. *See Chaussard v. Fulcomer*, 816 F.2d 925, 932 (3d Cir. 1987); *Edwards v. State of Kansas*, 751 F. Supp. 197, 199 (D. Kan. 1990).

2.    *Evidentiary Hearing in This Court*

To the extent petitioner seeks an evidentiary hearing here, the court should conclude that one is not necessary. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) is a hearing permitted under 28 U.S.C. § 2254(e)(2). Even assuming a hearing would be

27

permitted under § 2254(e)(2), petitioner has not established that a hearing is necessary. In deciding whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted).

Here, petitioner contends that an evidentiary hearing is necessary to discover whether the photographic line-up was impermissibly suggestive. However, he offers nothing beyond speculation to believe that the line-up was impermissibly suggestive. The habeas rules "do[] not . . . authorize fishing expeditions. A habeas petitioner must make sufficiently specific factual allegations; conclusory allegations will not suffice to mandate either discovery or a hearing." *Harris v. Johnson*, 81 F.3d 535, 540 (5th Cir. 1996). Petitioner's "'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing.'" *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)).

Moreover, an evidentiary hearing would not have the potential to advance petitioner's claims because no facts developed at an evidentiary hearing would be relevant to whether the trial court

28

reached an unreasonable determination with respect to petitioner's claim under § 2254(d)(1).   In *Cullen v. Pinholster*, 131 S. Ct. 1388, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C. section 2254(d)(1)–whether the state court determination was contrary to or an unreasonable application of established federal law–must be confined to the record that was before the state court. *See Pinholster*, 131 S. Ct. at 1398.  The *Pinholster* Court specifically found that the district court should not have held an evidentiary hearing regarding Pinholster's claims until after the Court determined that the petition survived review under § 2254(d)(1). *See id*.  Thus, even if this Court granted an evidentiary hearing, because petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the trial court,[4] this Court would have to "disregard [any] newly obtained evidence." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012).  Thus, in light of *Pinholster*, an evidentiary hearing is not appropriate. *See King v. Booker*, No. 2:11-CV-13676, 2012 WL 3597655, at *1 (E.D. Mich. Aug. 21, 2012) (Roberts, J.).

I.      *Recommendation Regarding Certificate of Appealability*

    1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language

---

[4]As noted above, although the trial court applied a procedural bar to petitioner's claim, its resolution of the merits as an alternative ground for relief constitutes and adjudication on the merits under the AEDPA.

29

represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983),

and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]"

*Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*,

529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial

showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the

burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the

courts that have considered the issue have concluded that "'[a] substantial showing requires the

applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could

resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement

to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v.

Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529

U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require

that certificates of appealability, unlike the former certificates of probable cause, specify which issues

are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

    Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254

Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a

certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal

Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED.

R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note,

2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the

30

certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

      2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should conclude that petitioner is not entitled to a certificate of appealability. It is clear that petitioner may not challenge the court of appeals's state law determinations regarding the elements of the felony-firearm offense or the types of evidence that can satisfy those elements. In light of these state law determinations, it is clear that the victim's testimony provided sufficient evidence to prove beyond a reasonable doubt that petitioner constructively possessed the firearm. Thus, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable. In light of the broad discretion a trial court has in deciding whether to grant a continuance to accommodate counsel, and the circumstances surrounding new counsel's request for a continuance, the resolution of petitioner's choice of counsel claim is not reasonably debatable. And for the reasons explained above, the resolution of petitioner's ineffective assistance claims is not reasonably debatable. Finally, because the trial court's denial of an evidentiary hearing does not raise a cognizable claim of a constitutional violation, the resolution of petitioner's evidentiary hearing claim is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

J.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/21/12


| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on December 21, 2012. |
| --- |
| s/Eddrey Butts<br>Case Manager |